# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JAMARR LANARD SCOTT,**

      **Petitioner,**

-vs-                                  **Case No. 8:14-cv-951-T-27AAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Petitioner, a Florida prisoner, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging his 2008 convictions for attempted second degree murder in the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent filed a response (Dkt. 5), and Petitioner replied (Dkt. 10). The petition is DENIED.

## PROCEDURAL HISTORY

On November 16, 2007, Petitioner was charged by Information with nine counts of attempted second degree murder (Respondent's Ex. 1). Although he had appointed counsel (Respondent's Ex. 2), he filed a *pro se* demand for a speedy trial on March 24, 2008 (Respondent's Ex. 3). On April 9, 2008, he filed a second demand for speedy trial that both he and counsel signed (Respondent's Ex. 4). Trial was held on May 13-14, 2008, and he was convicted on all nine counts (Respondent's Ex. 6). He was sentenced to 20 years on each count, consecutive (Respondent's Ex. 7). His convictions were affirmed (Respondent's Ex. 10). He filed several post-conviction motions alleging ineffective assistance of counsel, all of which were denied (Respondent's Exs. 11-20). He filed his federal habeas petition alleging nine grounds for relief (Dkt.1).

# STANDARDS OF REVIEW

## Standard of Review Under the AEDPA[1]

Habeas relief can only be granted if a state prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed

to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,'

4

and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Ground One

> The State Post-Conviction Court's Adjudication of Petitioner's Claim That Trial Counsel was Ineffective for Waiving Closing (Final) Argument was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts

Petitioner contends that trial counsel was ineffective in waiving closing argument. Counsel waived closing argument because he determined that he could not effectively or ethically argue the defense he presented at trial, namely, that Petitioner did not act with the intent to kill the victims.[2] Although Petitioner concedes that counsel could not argue that Petitioner did not intend to kill the victims, he contends that counsel should have argued that there was a lack of evidence that Petitioner "committed an 'act' of shooting at an individual victim alleged in separate counts with a firearm."

---

[2]Intent to kill was not an element of the offense of attempted second degree murder. Trial counsel presented the defense that Petitioner did not intend to kill the victims because the Information alleged that Petitioner "did attempt to kill" each victim (see Respondent's Ex. 1). Counsel unsuccessfully attempted to persuade the trial court to require the State to prove that allegation (see Respondent's Ex. 5, Vol. IV, pp. 420-36).

(Dkt. 1, p. 7).

In state court, Petitioner raised this claim in Ground One of his amended Rule 3.850 motion

(Respondent's Ex. 17, pp. 4-7). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for waiving closing argument. The Defendant acknowledges that counsel was correct in stating that he could not "effectively or even ethically" argue that the State had failed to prove an essential element - that the Defendant acted with the intent to kill specific individuals - because it was in fact not an essential element. However, he argues that counsel still had other grounds on which to challenge the State's case in closing argument and failed to do so. Specifically, the Defendant believes that counsel should have argued there was lack of evidence proving that the Defendant committed the act of discharging a firearm with the intent to injure each of the nine separate victims.

> The State contends, and this Court agrees, that the Defendant's claim is without merit. At trial three witnesses — Jeannette Moragne, Marquet Moragne, and Marlan Smith each identified the Defendant as the shooter of the rifle and had also previously identified the Defendant as the shooter to Detective Foster. *[See Ex. C: Jury Trial Transcript, pp. 225-240, 261-269, 318-328, 395-401].* Additionally, as this Court observed in Grounds Ten, Eleven, Twelve andThirteen of its June 21, 2012, order, the evidence presented at trial against the Defendant was overwhelming. Based on the testimony presented during trial and the overwhelming evidence against the Defendant, counsel could not have argued in good faith that the Defendant did not commit the act of discharging the firearm. See R. Regulating Fla. Bar 4-3.3.

> Furthermore, the State was not required to prove that the Defendant discharged the firearm with the intent of harming the specific victims alleged in the Information; simply that (1) the Defendant intentionally committed an act that could have resulted, but did not result, in the death of someone; and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. See Coissy v. State, 957 So.2d 53 (Fla. 4th DCA 2007). In fact, as the State explains in its response, the argument the Defendant alleges counsel should have made is the very argument counsel put forth during his motion for judgment of acquittal, which was discussed at length and ultimately denied. Counsel then realized he could not give a closing argument "effectively or even ethically" relying on this argument, as the Defendant himself admits. *[See Ex. C: Jury Trial Transcript, pp. 471-472].* The Defendant has simply rephrased the same argument counsel attempted to make on behalf of the Defendant's defense. As counsel attempted to argue precisely what the Defendant alleges he should have, but was foreclosed from doing so, counsel cannot be deemed ineffective. Accordingly, Ground One is denied.

(Respondent's Ex. 20, pp. 2-3). The state appellate court affirmed the denial of the amended Rule 3.850 motion (Respondent's Ex. 21).

There was strong evidence that Petitioner shot an assault rifle multiple times in the direction of several individuals while they were standing in front of Edith Sermons' house.[3] Jeannette Moragne, Marquet Moragne, and Marlan Smith testified that they saw Petitioner standing in the street with an assault rifle firing multiple shots (Respondent's Ex. 5, Vol. III, pp. 225-41, 261-69; Vol. IV, pp. 320-31). The detectives found numerous bullet shells where Petitioner and the other men with him had been firing their guns, and numerous bullet holes on the house (Respondent's Ex. 5, Vol. III, pp. 160-67, 174-79). Considering this evidence, counsel could not effectively argue that Petitioner did not discharge the rifle.

Petitioner has failed to demonstrate that the state courts' denial of this ineffective assistance claim was contrary to clearly established federal law, or was based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant relief.

**Ground Two**

> The State Post-Conviction Court's Adjudication of Petitioner's Claim That Trial Counsel was Ineffective for Failing to Raise a Motion for Judgment of Acquittal Within 10-Days After the Verdict was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that trial counsel was ineffective in failing to move under Rule 3.380, Florida Rules of Criminal Procedure,[4] for a judgment of acquittal on Counts One, Three, Four, Five,

---

[3] Other men had guns and opened fire.

[4] Rule 3.380(c) provides:

Renewal. --If the jury returns a verdict of guilty or is discharged without having returned a verdict, the defendant's motion may be made or renewed within 10 days after the reception of a verdict and the

Six, Seven, Eight, and Nine within ten days after the verdict. He asserts that counsel should have filed the motion and argued that there was no evidence that Petitioner committed an "intentional act" against each victim named in those Counts. He appears to argue that the evidence showed that he intended to shoot only at Jeannette Moragne, not the other victims.

Petitioner raised this claim in Ground Two of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 8-27). In denying the claim, the state post-conviction court stated:

> The Defendant's claims are without merit. At the close of the State's case, counsel specifically motioned for a judgment of acquittal on all counts. Counsel put forth the same arguments that the Defendant does above - that the State had failed to prove that the Defendant intended to shoot and kill the alleged victims. *[See Exhibit C: jury Trial Transcript, pp. 420-431]*. After a very lengthy discussion addressing counsel's arguments, the Court denied counsel's motion as to each count. *[See Exhibit C: jury Trial Transcript, pp. 420-431]*. After the State rested its case and counsel made the motion for judgment of acquittal, no further evidence was received and no further testimony was provided. *[See Exhibit C: jury Trial Transcript, pp. 53-54; p. 459]*. There is nothing in the record to indicate that, had counsel renewed his motion after the verdict, the Court would have granted the motion based upon the same evidence used to deny the motion. To suggest that the Court would have done anything other than deny the motion for a second time without first being presented with any new facts or evidence is nonsensical. Accordingly, had counsel renewed the motion for judgment of acquittal he would have renewed a meritless motion. Based upon the foregoing, the Defendant has failed to establish prejudice. Therefore, Ground Two is denied.

(Respondent's Ex. 18, pp. 4-5). The claims was affirmed on appeal.

In Florida, a motion for judgment of acquittal challenges the sufficiency of the State's evidence. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). Because there was sufficient evidence demonstrating that the other victims were in close proximity to Jeannette Moragne (either inside the house or in the yard with

---

jury is discharged or such further time as the court may allow.

Moragne in front of the house) at the time Petitioner and the others began shooting in their direction,[5] a jury could reasonably conclude that Petitioner committed an act imminently dangerous to all the victims and therefore was guilty of attempted second degree murder with respect to each victim. *See State v. Brady*, 745 So. 2d 954 (Fla. 1999) (affirming attempted second degree murder convictions as to both victims Mack and Harrell where evidence showed that defendant intended to shoot Mack but struck Harrell, who was in close proximity to Mack). Petitioner's contention that he only intended to shoot at Jeannette Moragne, not at the other victims, is no defense to the attempted second degree murder convictions. *Id.*

Accordingly, Petitioner has failed to establish that the state courts' denial of this claim was contrary to *Strickland* or based on an unreasonable determination of the facts. Ground Two warrants no relief.

## Ground Three

> The State Post-Conviction Court's Adjudication of Petitioner's Claim That Trial Counsel was Ineffective for Seeking Speedy Trial With Demand Based Upon an Invalid Defense was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that counsel's decision to demand a speedy trial was not based on sound trial strategy. He argues that the strategy was unreasonable because it was based on counsel's erroneous belief that: 1) the State had to prove Petitioner intended to kill one or more of the victims; and 2) the victims would not appear at trial, since they failed to appear for their depositions.

Petitioner raised this claim in Ground Three of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 27-29). In denying the claim, the state post-conviction court stated:

---

[5]See Respondent's Ex. 1, Vol. III, pp. 230, 236, 245, 268; Vol. IV, pp. 323-24, 334, 368-69, 374, 377-78, 380-82, 385-86).

The Defendant contends that counsel was ineffective for demanding speedy trial based upon an invalid defense. He claims that counsel demanded speedy trial for two reasons: (1) because counsel believed the State could not prove that the Defendant had the intent to kill any of the victims; and (2) because counsel did not believe the victims would appear for trial as they had failed to appear for their depositions. The Defendant argues that counsel's April 9, 2008, demand for speedy trial caused counsel to be unprepared for trial, not having fully researched the elements of attempted murder in the second degree.

The State contends, and this Court agrees, that the Defendant's claim is without merit. First, the Defendant filed a pro se demand for speedy trial on March 24, 2008. *[See Exhibit D: March 24, 2008, Demand for Speedy Trial].* Thereafter, counsel filed a demand for speedy trial on April 9, 2008, which the Defendant himself signed as well. *[See Exhibit E: April 9, 2008, Demand for Speedy Trial].* Any suggestion on the part of the Defendant that speedy trial was solely demanded by counsel is disingenuous. It is clear from the record that the Defendant demanded speedy trial. *[See Exhibit D: March 24, 2008, Demand for Speedy Trial; Exhibit E: April 9, 2008, Demand for Speedy Trial; Exhibit C: Jury Trial Transcript, pp. 8-9; 42-45; 60-61; 64].*

Second, very lengthy discussions were held regarding the Defendant's demand for speedy trial and the ramifications of his demand. Prior to the start of trial, the State noted for the record that the Defendant "demanded speedy trial and did not afford his counsel the opportunity - or me - to take depositions in the case, and he is making a conscious decision to go forward without that." The trial court then inquired if the Defendant understood the State's comment and the Defendant indicated that he did. The trial court asked the Defendant if he was "waiving all of these possible defenses and the opportunity for [counsel] to discover any other witnesses or any other evidence that may assist you in your defense" and the Defendant stated that he was. *[See Exhibit C: Jury trial Transcript, pp. 8-9].*

Thereafter, during a recess in the jury selection process, the State commented that "if [the Defendant] is convicted at trial he is not going to be later on allowed to claim that his lawyer didn't do an adequate job because [the Defendant] demanded speedy trial, and his lawyer has not had time to do depositions, or further discovery. [The Defendant] needs to understand that he has put us in this position, so he can't later claim that his lawyer didn't have to or do something ineffective." *[See Exhibit C: Jury Trial Transcript, p. 42].* The trial court asked the Defendant if he understood that "by requiring the trial to be quickly,... [he was] tying the hands of [counsel]..." *[See Exhibit C: Jury Trial Transcript, pp. [sic] 44].* The Defendant indicated that he did understand. *[See Exhibit C: Jury Trial Transcript, pp. 45].* The trial court then asked the Defendant if he understood that he was "waiving [counsel's] ability" and that he wouldn't "be able to come back and say, '[w]ell, he wasn't very effective for

me. I'm really disappointed on how he did his job." The Defendant again indicated that he understood. *[See Exhibit C: Jury Trial Transcript, pp. 45].* Later, after becoming aware that the victims who had failed to appear for their depositions had appeared for trial, the trial court noted once more that the Defendant had demanded speedy trial despite counsel warning him of the consequences. *[See Exhibit C: Jury Trial Transcript, pp. 60-61; 64].*

The record makes clear that the Defendant himself eagerly demanded a speedy trial and was fully advised and warned of the consequences of demanding speedy trial; namely that counsel would not have enough time to adequately prepare for trial. Therefore, Ground Three is denied.

(Respondent's Ex. 20, pp. 3-4). The denial of the claim was affirmed on appeal.

Initially, to the extent Petitioner is claiming that his counsel was inadequately prepared for trial, counsel could not have been ineffective for not being prepared, since Petitioner decided to immediately proceed to trial. The trial judge, prosecutor, and defense counsel warned Petitioner that if he insisted on going to trial and not waiving speedy trial, his counsel would have to go to trial without being fully prepared (Respondent's Ex. 5, Vol. I, pp. 8-9, 42-45). Nevertheless, Petitioner elected to proceed with a speedy trial (Id., pp. 45-46). Lack in preparation was therefore not the fault of counsel.

Petitioner also fails to show that demanding a speedy trial was unreasonable trial strategy. Decisions and actions by counsel are sound trial strategy, and thereby effective, if a reasonable attorney could have taken the same actions. *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1243 (11th Cir. 2011). And where the record is incomplete or unclear about an attorney's actions, it will be presumed that the attorney exercised reasonable professional judgment. *Id.* Whether to pursue a particular trial strategy is left to counsel, who must not be second-guessed. *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995). An unsuccessful trial strategy does not prove ineffective assistance of counsel. *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010).

Counsel stated that although he originally refused to file a demand for speedy trial, he and Petitioner agreed to do so after all the victims failed to appear at their scheduled depositions (Respondent's Ex. 5, Vol. I, p. 43). This court cannot find that demanding speedy trial in anticipation that the victims may not appear at trial was unreasonable trial strategy under the circumstances. This is especially true, where, as here, the victims' eyewitness testimony was essential to the State's case.

Finally, even assuming deficient performance, Petitioner has failed to demonstrate prejudice. Given the overwhelming evidence of Petitioner's guilt, delay of the trial would not have altered the outcome of the case. Petitioner does not point to witnesses or evidence counsel could have investigated, or a strategy counsel could have pursued if he had more time to prepare. Petitioner has failed to demonstrate that the state courts' denial of this claim was contrary to clearly established federal law, or was based on an unreasonable determination of the facts. Accordingly, Ground Three does not warrant relief.

**Ground Four**

> The State Post-Conviction Court's Adjudication of Petitioner's Claim That Trial Counsel was Ineffective for Failing to Object When the Prosecution Misstated the Evidence Presented Thereby [sic] Failed to Preserve the Issue for Appeal was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that counsel was ineffective in failing to object to the prosecutor's statement during closing argument that bullets reached the back of the house. He contends that there was no evidence supporting the statement, and therefore the prosecutor improperly commented on facts not in evidence. He contends that had counsel objected to the comment, the jury would have found him not guilty on Counts Six, Seven, Eight, and Nine of the Indictment.

Petitioner raised this claim in Ground Four of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 29-31). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for failing to object to statements made by the State during closing argument. He suggests the following statement should have been objected to by counsel:
>
>> So, folks, I would respectfully submit to you that you should, in fact, find the defendant guilty of attempted murder as to each and every one of those counts, whether they are inside the home or outside the home, because it's the act and its not the intent to kill any specific person. So could he have caused the deaths of any one of those individuals in the home? Course he could have. *Did the bullets - do we know did they even reach the back of home? Absolutely they did. The evidence and the testimony establish that. [See Exhibit C: Jury Trial Transcript, pp. 470-471].*
>
> He claims none of the victims testified that the "bullets reached the back of the house," and that had counsel objected to the above statement, the outcome of the trial would have been different.
>
> The Defendant's claim is without merit. Attorneys should be afforded wide latitude in presenting closing argument, but must confine their argument to the facts and evidence presented to the jury. See Ford v. State, 702 So. 2d 279 (Fla. 4th DCA 1997). The State is permitted to comment on the evidence and testimony and offer inferences. See Bertolotti v. State, 476 So. 2d 130 (Fla. 1985). Here, the State's comment stems from evidence presented at trial during Detective Anthony Foster's testimony. *[See Exhibit C: Jury Trial Transcript, pp. 309-310].* Since the allegedly improper comments originated from facts and inferences presented at trial, they were proper, and any objection would have been overruled. See Gonzalez v. State, 990 So. 2d 1017, 1028-29 (Fla. 2008)("[T]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may be reasonably drawn from the evidence.") quoting Bertolotti, 476 So. 2d at 134.
>
> As a corollary to the above claim, the Defendant also argues that counsel was ineffective for failing to preserve this issue for appellate review. This claim is without merit as the Defendant's claim would, as demonstrated above, not have been a basis for reversal on direct appeal. See Daniels v. State, 806 So. 2d 563 (Fla. 4th DCA 2002)(A claim of ineffective assistance of counsel for failing to properly preserve an issue for appeal may be cognizable in a motion for postconviction relief); see also State v. Chattin, 877 So. 2d 747, 749 (Fla. 2d DCA 2004) (Under the Strickland prejudice prong, the defendant "must show that had his counsel preserved

the issues, [the appeals] court likely would have reversed his conviction on direct appeal."); see also Eure v. State, 764 So. 2d 798 (Fla. 2d DCA 2000); State v. Bouchard, 922 So. 2d 424 (Fla. 2d DCA 2006). Based upon the foregoing, Ground Four is denied.

(Respondent's Ex. 18, pp. 5-6) (emphasis is original) (footnote omitted). The denial of the claim was affirmed on appeal.

The state post-conviction court correctly found that the prosecutor's statement was a proper comment on the evidence, specifically, Detective Foster's testimony that bullets had entered through the front of the home and traveled to a "back bedroom" in the "rear" of the home (Respondent's Ex. 5, Vol. IV, pp. 309-10). "In closing argument, counsel is permitted to review the evidence and fairly discuss and comment upon properly admitted testimony and logical inferences from that evidence." Conahan v. State, 844 So. 2d 629, 640 (Fla. 2003).

The state courts have answered the question of what would have happened had defense counsel objected to the prosecutor's statement - the objection would have been overruled. Consequently, Petitioner has failed to establish deficient performance or prejudice. See Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

In sum, counsel was not ineffective in failing to object to the prosecutor's argument. Even if he had objected, the objection would have been overruled. Petitioner demonstrates no prejudice from any claimed deficient performance. His claim of ineffective assistance of counsel therefore fails both prongs of the Strickland test. Petitioner has not met his burden of proving that the state courts'

resolution of this claim was contrary to controlling Supreme Court precedent. Accordingly, Ground Four fails on the merits.

## Ground Five

> The State Post-Conviction Court's Adjudication of the Petitioner's Claim That Trial Counsel was Ineffective for Failing to Object When the Prosecution Used Improper Corroboration Evidence was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that counsel was ineffective in failing to object when the prosecutor referenced improper corroboration evidence during closing argument. He argues that the prosecutor improperly stated that the assault rifle Petitioner possessed at the time he was arrested corroborates the witnesses' testimony that he possessed an assault rifle at the time of the crime.

Petitioner raised this claim in Ground Five of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 31-32). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for failing to object to the State's use of improper corroboration evidence. He suggests counsel should have objected to the following statement:

>> Now, well, the defendant in this case had in his possession later on a weapon. We didn't try and hide that from you. He had in his possession a weapon, not any weapon, another assault rifle, and it was in fact, *another assault rifle. It wasn't the one used in the commission of the crime*, and we know that. We didn't try to hide that from you. Well, why is that important? *Well, after the offense the defendant is still in possession of an assault rifle. He's still - is it consistent with what the witnesses in this case told you, that this defendant got out with an assault rifle*? Does it make common sense? The judge is gonna instruct you to use your common sense. Does it make common sense to believe that somebody that committed this offense is gonna retain the weapon and keep it with them, or are they gonna get rid of the weapon and then maybe later on when they feel safe, seven, eight, nine, ten days later get another weapon? So use your common sense in evaluating that, folks. *[See Exhibit C: Jury*

*trial [sic] Transcript, p. 468].*

He claims that had counsel objected to the above statements, the outcome of the trial would have been different.

The Defendant's claim is without merit. Prior to the admission of any testimony regarding the assault rifle found during the Defendant's arrest, counsel motioned to exclude the admission of any such testimony and to preclude the State from admitting the assault rifle into evidence. After hearing arguments from both counsel and the State, the Court denied counsel's motion and permitted the State to use the assault rifle as evidence. *[See Exhibit C: Jury Trial Transcript, pp. 287-295].* Thereafter, Detective Anthony Foster testified that during the Defendant's arrest, a "high-powered assault rifle" was located in the trunk of the vehicle the Defendant has been occupying. When the State attempted to admit the rifle into evidence, counsel stated that he had "no objection, well, subject to [his] previous objection."*[See Exhibit C: Jury Trial Transcript, pp. 405-406].* The Court noted counsel's continued objection and permitted the State to proceed. It is clear that counsel repeatedly objected to the admission of any evidence regarding the rifle found in the Defendant's vehicle. However, as his objections were denied by the Court, the evidence was admitted.

As noted above in Ground Four, attorneys should be afforded wide latitude in presenting closing argument, but must confine their argument to the facts and evidence presented to the jury. See Ford v. State, 702 So. 2d 279 (Fla. 4th DCA 1997). The State is permitted to comment on the evidence and testimony and offer inferences. See Bertolotti v. State, 476 So. 2d 130 (Fla. 1985). Here, as discussed above, the State's comment stems from evidence presented at trial. *[See Exhibit C: Jury Trial Transcript, pp. 405-410].* Since the allegedly improper comments originated from facts and inferences presented at trial, they were proper, and any objection raised by counsel would have been denied. See Gonzalez v. State, 990 So. 2d 1017, 1028-29 (Fla. 2008)("[T]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may be reasonably drawn from the evidence.") quoting Bertolotti, 476 So. 2d at 134. Therefore, Ground Five is denied.

(Respondent's Ex. 18, pp. 6-7) (emphasis in original) (footnote omitted). The denial of the claim

was affirmed on appeal.

Defense counsel filed a motion in limine to preclude the State from introducing evidence of

an assault rifle found in Petitioner's car eight days after the shooting (Respondent's Ex. 5, Vol. IV,

pp. 287-94). Defense counsel argued that the assault rifle was "unrelated to any of the weapons used in this particular case." (Id., p. 288). The State argued that although there was no evidence that the assault rifle had been fired at the scene of the shooting, it had not been established that the assault rifle was not "related" to this case, since it was discovered eight days after the shooting in the car identified as the vehicle Petitioner exited immediately before the shooting, multiple people had exited the vehicle with assault rifles, and this assault rifle may not have been fired (Id., pp. 288-93). The state trial court denied the motion in limine (Id., p. 294). The State introduced, over defense counsel's continuing objection, evidence of the assault rifle discovered in Petitioner's car (Id., pp. 405-409).

Because evidence of the assault rifle was presented during trial, the state post-conviction court found that the prosecutor's comments regarding the assault rifle were proper, and any objection would have been denied. The state courts therefore have answered the question of what would have happened had defense counsel objected to the prosecutor's comments - the objection would have been overruled. Accordingly, Petitioner has failed to establish deficient performance. *See Callahan v. Campbell*, 427 F.3d at 932.

Moreover, Petitioner has failed to demonstrate that his counsel committed prejudicial error under *Strickland* for not objecting to the comments. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process"" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In making this assessment, a reviewing court must evaluate the allegedly improper comments in the context of both the prosecutor's entire closing

argument and the trial as a whole. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).

Considered in the context of the entire trial and the overwhelming evidence against Petitioner, the prosecutor's comments regarding the assault rifle, even if improper, were not so egregious as to render the trial fundamentally unfair.[6] Nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). The prosecutor's comments are not of such magnitude as to invalidate the entire trial.

Petitioner's claim of ineffective assistance of counsel fails both prongs of the *Strickland* test. Petitioner has not met his burden of proving that the state courts' resolution of this claim was an unreasonable application of controlling Supreme Court precedent. Accordingly, Ground Five fails on the merits.

**Ground Six**

> The State Post-Conviction Court's Adjudication of the Petitioner's Claim That Trial Counsel was Ineffective for Failing to Fully Inform Him as to the Direct Sentencing Consequences Under 10-20-Life if He Rejected the State's Plea Offer and Lost at Trial was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that counsel was ineffective in failing to adequately inform him that if he rejected the State's plea offer (according to Petitioner, 20 years on each count to run concurrently), proceeded to trial, and lost, that he would be sentenced to a minimum mandatory

---

[6]The prosecutor made it clear during closing argument that the assault rifle discovered in Petitioner's car was not the rifle Petitioner shot during the incident (Respondent's Ex. 1, Vol. V, p. 468).

sentence of 20 years on each of the nine counts, that those sentences would be consecutive, and that he would be sentenced to a total of 180 years.

Petitioner raised this claim in Grounds Six, Seven, and Eight of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 32-38). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for failing to inform him that if he were convicted at trial he would be subject to: consecutive sentences on all nine counts; twenty-year minimum mandatory sentences; and essentially a life sentence pursuant to the 10-20- Life Statute. He alleges that had he been informed of these consequences, he would not have rejected the State's plea offer involving concurrent sentences.

> The Defendant's claim is without merit and directly refuted by the record. During a conference on the day of trial, prior to jury selection, the State noted that the charges carried a "20-year minimum mandatory," and specifically stated that "if convicted, the law requires a consecutive 20 years for each count that he is convicted for. So it's my understanding it's the minimum of 180 years in the Department of Corrections and a maximum of 270 years." *[See Exhibit C: Jury Trial Transcript, p. 6]*. Thereafter, the Defendant indicated he understood that if he were convicted of all nine counts, he faced a minimum of 180 years and a maximum of 270 years. *[See Exhibit C: Jury Trial Transcript, p. 7]*. The record makes clear that the Defendant was fully aware he would be subject to consecutive, twenty-year minimum mandatory sentences on all nine counts if convicted at trial.

> Additionally, the Defendant's claim that he rejected the State's plea offer is disingenuous. During discussions on the day of trial, the State noted that the Defendant made an offer to the State, which the State had begun to accept, when the Defendant withdrew from negotiations. *[See Exhibit C: Jury Trial Transcript, pp. 61-61]*. The Defendant then stated that he had not made any offers to the State. At that point, the Court interjected and informed the Defendant that he had made an offer to the State because the State does not make offers. *[See Exhibit C: Jury Trial Transcript, pp. 62-63]*. The Court then again communicated the maximum punishment upon conviction to the Defendant. *[See Exhibit C: Jury Trial Transcript, p. 63]*. Consequently, Grounds Six, Seven, and Eight are denied.

(Respondent's Ex. 18, pp. 7-8) (footnote omitted). The state appellate court affirmed the denial of the claim.

Initially, Petitioner has not shown by clear and convincing evidence that the state post-conviction court unreasonably found that Petitioner had not rejected a plea offer from the State. Petitioner's assertion that he rejected a plea offer for concurrent 20 year sentences on each count is vague and unsupported by any specific factual allegations or evidence. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971)). "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Id.* (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982)). Accordingly, Petitioner fails to show that counsel was ineffective with respect to a plea offer.

Moreover, even if Petitioner was inadequately informed by his attorney regarding the sentence that could be imposed, he suffered no prejudice as a result. Prior to trial, the prosecutor and the trial judge informed Petitioner that he was facing a minimum of 180 years in prison if convicted on all nine counts, since the law required a consecutive sentence of 20 years for each count (Respondent's Ex. 5, Vol. I, pp. 5-7; Vol. II, p. 58).

Petitioner's claim of ineffective assistance of counsel fails both prongs of the *Strickland* test. Petitioner has not met his burden of proving that the state courts' resolution of this claim was contrary to controlling Supreme Court precedent. Accordingly, Ground Six fails on the merits.

**Ground Seven**

> The State Post-Conviction Court's Adjudication of the Petitioner's Claim That Trial Counsel was Ineffective for Failing to Advise Scott of the Trial Court Offer to Resume Plea Negotiations was Contrary to or an Unreasonable Application of

20

Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that trial counsel was ineffective in failing to inform him that the trial court offered that the parties resume plea negotiations. He is referring to a bench conference that occurred after the State's closing argument but before the jury was instructed:

> Judge: Let me ask you this. I know there had been earlier negotiations. Is there any benefit in taking any break to continue any of the negotiations at this point before we bring the jury in and go through jury instructions?
>
> Defense counsel: Just charge the jury.
>
> Judge: Okay. You don't see that there would be any benefit?
>
> Defense counsel: No.
>
> Judge: Okay. All right. Thank you.

(Respondent's Ex. 5, Vol. V, p. 477). Petitioner contends that had counsel informed him of what the court said, he would not have proceeded with the trial, but would have resumed plea negotiations that, he asserts, would have resulted in a sentence of less than the 180 years he received.

Petitioner raised this claim in Ground Nine of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 38-40). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for failing to advise him that the trial court had offered to resume plea negotiations. He alleges that the State was receptive to the trial court's offer and would have resumed negotiations. He further claims that had counsel informed him of the trial court's offer, he would have agreed to resume plea negotiations and would not have continued with the trial.
>
> The State contends, and this Court agrees, that the Defendant's claim is without merit. First, the Defendant's allegation that the State was receptive to the trial court's offer to resume plea negotiations is entirely untrue. At no point during the discussions between the State, counsel, and the trial court did the State indicate or otherwise infer that it was amenable to re-opening plea negotiations. *[See Exhibit C: Jury Trial Transcript, pp. 476-487]*. In fact, during the jury selection process, the

Defendant was permitted to speak with his mother about possibly entering a plea to avoid proceeding with the trial. The trial court asked the State for its opinion and th[e] State indicated that it wished to proceed to trial. *[See Exhibit C: Jury Trial Transcript, pp.. 61-62]*. During this discussion, the State also noted that the Defendant had previously submitted an offer to the State and that, after the State began to accept his offer, the Defendant withdrew from negotiations. *[See Exhibit C: Jury Trial Transcript, pp. 61-62]*. As the State notes in its response, whether or not the trial court would have entertained resuming plea negotiations is not a reflection of the State's position. Given the circumstances, it more reasonably appears that the State would not entertain any further offers from the Defendant and that it was proceeding with the trial. Accordingly, had the Defendant subsequently offered a plea to the State, there exists no reasonable probability that the offer would have been accepted. Any suggestion otherwise amounts to pure speculation and speculation cannot form the basis for postconviction relief. Johnson v. State, 921 So. 2d 490, 503-04 (Fla. 2005); Solorzano v. State, 25 So. 3d 19, 23 (Fla. 2d DCA 2009). Consequently, the Defendant suffered no prejudice due to counsel's performance and Ground Nine is denied.

(Respondent's Ex. 20, p. 5). The denial of the claim was affirmed on appeal.

The state courts' determination that Petitioner suffered no prejudice was a reasonable application of the prejudice prong of *Strickland*, and the court relied on a reasonable determination of the facts. Petitioner points to nothing in the record that suggests the State would have considered further plea negotiations at that stage of the trial. Any assertion that the State would have agreed to a plea with a sentence less than Petitioner actually received is wholly speculative and therefore insufficient to warrant federal habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Accordingly, Ground Seven does not warrant relief.

**Ground Eight**

> The State Post-Conviction Court's Adjudication of the Petitioner's Claim That Trial Counsel was Ineffective for Failing to Object to the Sufficiency of Evidence that Scott Discharged a Firearm at the Victims in Counts Six, Seven, Eight and Nine was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that counsel was ineffective in failing to argue that the evidence was insufficient to find that he "discharged a firearm at" the victims in Counts Six, Seven, Eight, and Nine of the Information.[7] He asserts that had counsel made this argument, he "would have received a 10-year minimum mandatory sentence" with respect to Counts Six, Seven, Eight, and Nine, since "subsection 775.087(2)(a)2[, Florida Statutes] dictates that a 20-year minimum mandatory sentence could not be imposed *merely because Scott discharged* his weapon where he was not the only person to do so." (Dkt. 1, p. 34) (emphasis in original).

Petitioner raised this claim in Grounds Ten, Eleven, Twelve, and Thirteen of his amended Rule 3.850 motion (Respondent's Ex. 17, pp. 40-47). In denying the claim, the state post-conviction court stated:

> The Defendant contends that counsel was ineffective for failing to challenge the sufficiency of the evidence. Specifically, he argues that no competent, substantial evidence was adduced at trial supporting the allegation that the Defendant discharged a firearm at Edith Sermon (count six), Darryl Sermon (count seven), Fred Sermons (count eight), and Virgil Sermons (count nine). Additionally, the Defendant argues that "without clear evidence" that he discharged a firearm at these victims, he could not have received twenty-year minimum mandatory sentences "merely because a weapon had been discharged."

> The Defendant's claim is without merit. It appears the Defendant believes that the State was required to prove that the Defendant discharged the firearm knowing that these specific victims were located inside the house. However, attempted

---

[7]Those victims were Edith Sermons (Count Six), Darrell Sermons (Count Seven), Fred Sermons (Count Eight), and Virgil Sermons (Count Nine) (Respondent's Ex. 1).

second-degree murder has two elements: (1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone; and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. See Coissy v. State, 957 So. 2d 53 (Fla. 4th DCA 2007).

Initially, this Court notes that a party wishing to challenge the sufficiency of the evidence may motion the Court for a judgment of acquittal. See Florida Rule of Criminal Procedure 3.380. As discussed above in Ground Two, counsel did motion for a judgment of acquittal at the close of the State's case and the Court denied counsel's motion. Thus, it is clear that counsel did challenge the sufficiency of the evidence against the Defendant.

However, to the extent the Defendant contends counsel should have put forth some other kind of motion, his claim is without merit. The trial testimony is replete with competent, substantial evidence establishing that the Defendant discharged a firearm and that the bullets entered the house, where the victims were located. *[See Exhibit C: Jury Trial Transcript, pp. 225-240, 261-269, 305-306, 318-328, 367-372, 373-388, 395-401].* The fact that the Defendant may not have known that those individuals were inside the house is irrelevant. See State v. Brady, 745 So. 2d 954 (Fla. 1999); see also Brown v. State, 790 So. 2d 389 (Fla. 2000). It is an incredible statement for the Defendant to assert that because he was unaware of the inhabitants' presence, he could not be found guilty of attempted second degree murder for merely firing a gun into a home. Given the evidence presented at trial, had counsel made any motion challenging the sufficiency of the evidence, it would have been denied.

Additionally, pursuant to the 10-20-Life Statute, any person who is convicted of attempted murder and during the course of the commission of the attempted murder such person discharged a firearm shall be sentenced to a minimum term of imprisonment of twenty years. See §775.087(2)(a)(2), Fla. Stat. (2008). The jury heard testimony from several witnesses identifying the Defendant as the shooter of the rifle and subsequently found that the Defendant did discharge a firearm at each victim. *[See Exhibit D: Jury Verdict Forms].* Consequently, the Defendant was subject to twenty-year minimum mandatory sentences on all counts. Based upon the foregoing, Grounds Ten, Eleven, Twelve, and Thirteen are denied.

(Respondent's Ex. 18, pp. 8-9) (footnote omitted). The denial of this claim was affirmed on appeal.

To be found guilty of attempted second degree murder in Florida, the State must prove

beyond a reasonable doubt that: "1. (Defendant) intentionally committed an act which would have

resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or

[he] [she] failed to do so. 2. The act was imminently dangerous to another and demonstrating a depraved mind without regard for human life." FL ST CR JURY INST 6.4; (see Respondent's Ex. 5, pp. 489-90). To establish the second element, the State was required to prove that the act committed by Petitioner was one that (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) was done from ill will, hatred, spite, or an evil intent; and (3) was of such a nature that the act itself indicates an indifference to human life. FL ST CR JURY INST 6.4; (see Respondent's Ex. 5, p. 490).

The evidence established that Petitioner intentionally fired an assault rifle multiple times in the direction of a group of people standing in front of the house. Several shots entered the house in which Edith Sermons, Darrell Sermons, Fred Sermons, and Virgil Sermons were sleeping. Under these circumstances, Petitioner fails to establish that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Despite his argument to the contrary, the State was not required to prove that he intended to shoot at the victims in the house. *See Brady*, 745 So. 2d at 958 (holding that where evidence showed that defendant shot at intended victim but hit a bystander, a jury could have reasonably concluded that the "act imminently dangerous to others" requirement of the second-degree murder statute was met, since the bystander was in close proximity to the intended victim).

Petitioner has not shown that trial counsel was ineffective in not asserting that the State failed to prove attempted second degree murder of the victims in the house. Nor has he shown that there is a reasonable probability that raising that argument would have changed the outcome of either the

trial or his sentences.[8] Ground Eight therefore does not warrant relief.

**Ground Nine**

> The State Appellate Court's Adjudication of the Petitioner's Claim That His Appellate Counsel was Ineffective was Contrary to or an Unreasonable Application of Strickland v. Washington or was Based on an Unreasonable Determination of the Facts.

Petitioner contends that appellate counsel was ineffective. Claims of ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Petitioner contends that appellate counsel should have argued that: 1) the evidence was insufficient to support his attempted second degree murder convictions on Counts Six, Seven, Eight, and Nine, since he did not intentionally commit an act imminently dangerous to the victims in the house; and 2) the trial court erred in admitting the evidence and testimony regarding the assault rifle and ammunition discovered in his car.

With respect to his first argument, "[t]o determine sufficiency of the evidence under Florida law, a court considers whether, 'after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.'" *Jones v. Sec'y*, 487 Fed. Appx. 563, 568-569 (11th Cir. 2012) (unpublished) (quoting

---

[8]Under §775.087(2)(a)(2), Fla. Stat. (2008), any person who is convicted of an attempt to commit a felony and during the course of the commission of the attempted felony discharged a firearm shall be sentenced to a minimum term of imprisonment of twenty years. Since Petitioner was convicted of nine counts of attempted second degree murder and discharged a firearm during the commission of those felonies, he was properly sentenced to twenty years on each count.

*Johnston v. State*, 863 So. 2d 271, 283 (Fla. 2003)). As explained, to support a conviction for attempted second degree murder, the State was required to prove that Petitioner intentionally committed an act which could have resulted in the death of the victims, that the act was imminently dangerous to the victims, and that it demonstrated a depraved mind without regard for human life.

The jury heard testimony that one victim, Jeannette Moragne, called Chrisseandra Walker (Petitioner's girlfriend) to ask her to have Marquis Pennington, Walker's brother, bring Moragne's daughter (Sade Smith) to her grandmother's (Edith Sermon) house, where Moragne and Smith resided (Respondent's Ex. 5, Vol. III, pp.201-09). Smith did not want to stay at Sermon's house (Id., pp. 210, 214), and she had left the house with Pennington (Id., p. 215). Moragne and Walker argued on the phone for approximately 15 to 20 minutes (Id., pp. 219-20). Soon after, Walker arrived at Sermon's house and began arguing with Moragne (Id., pp. 220-22). Walker called Pennington and told him that she was being threatened (Id., p. 223). She subsequently made a second call to Petitioner (Id., p. 224).

Shortly after Walker spoke to Pennington and Petitioner, two cars drove up and stopped in the street in front of Sermon's house (Id., p. 226). Petitioner, Pennington, and other men exited the cars holding guns (Id., pp. 226-28). Petitioner was holding an assault rifle (Id., pp. 227-28). He said "Oh, this is how you want to do it?" and started shooting the assault rifle toward Moragne and the other people standing in front of Sermon's house (Id., pp. 229-30). Sermon and four others were in the house during the shooting (Respondent's Ex. 1, Vol. IV, pp. 368, 374, 377, 381, 385).

After the incident, police found numerous bullet shells fired from an assault rifle and other guns, and multiple bullet holes in Sermon's house and the house next door (Respondent's Ex. 1, Vol. III., pp. 157-98). Several items inside Sermon's house were damaged by the bullets (Id., pp. 178-79,

188-91).

The evidence established that Petitioner intentionally shot an assault rifle multiple times in the direction of a group of people standing in front of Sermon's house. The shots could have resulted in the death of the victims standing in front of the house and those in the house, except that the shots failed to hit any of the victims. Petitioner's actions were imminently dangerous to all of the victims, and demonstrated a depraved mind without regard for human life. *See, e.g., Golding v. State*, 26 Fla. 530, 532 (Fla. 1890) ("Murder in the second degree under the statute is, for instance, when a man discharges a gun, throws a stone or brick into a crowd without any intention of killing any particular individual, and one of the persons in the crowd is killed thereby, the killing is murder in the second degree, because the discharge of the gun, throwing a stone or brick into the crowd evinces a depraved mind regardless of human life, although the party has no intention of killing any particular individual."); *Pressley v. State*, 395 So. 2d 1175, 1177 (Fla. 3d DCA 1981) ("Clearly, a person of ordinary judgment would know that firing a loaded gun toward a group of people is reasonably certain to kill or do serious bodily injury to another. Appellant's acts also indicated an indifference to human life and demonstrated ill will. Even though a defendant has no intent to hit or kill anyone, firing a gun into a crowd of people constitutes second degree murder when a person is killed as a result.") (citing *Golding*).[9]

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found proof of guilt beyond a reasonable doubt that Petitioner committed attempted second

---

[9]"The depraved-mind element of second-degree murder requires 'ill will, hatred, spite, or an evil intent.'" *Perez v. State*, 187 So. 3d 1279, 1282 (Fla. 1st DCA 2016) (quoting *Poole v. State*, 30 So. 3d 696, 698 (Fla. 2d DCA 2010)). Jeannette Moragne's testimony that Petitioner, Pennington, and others arrived with guns after Walker (Petitioner's girlfriend and Pennington's sister) called Petitioner and Pennington and told them that she was being threatened, is circumstantial evidence that Petitioner was acting with "ill will, hatred, spite, or evil intent."

degree murder of the victims in the house. The Florida Second District Court of Appeal therefore reasonably concluded that appellate counsel was not ineffective in failing to challenge the sufficiency of the evidence with respect to the convictions on Counts Six through Nine because that challenge would have been meritless. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000 ) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.") (quotation marks and citation omitted).[10]

Petitioner's argument that appellate counsel should have challenged the admission of testimony and evidence regarding the assault rifle discovered in Petitioner's car several days after the shooting likewise would have been meritless. In Florida, "where the evidence at trial does not link a weapon seized to the crime charged, the weapon is inadmissible." *O'Connor v. State*, 835 So. 2d 1226, 1231 (Fla. 4th DCA 2003). However, evidentiary errors such as the admission of irrelevant evidence are subject to harmless error review in Florida. *O'Connor*, 835 So. 2d at 1232 ("The final question is whether the admission of [photographs of a shotgun and a bullet proof vest that were not relevant to the crime charged] was harmless error."); *Jackson v. State*, 107 So. 3d 328, 344 (Fla. 2012) ("The erroneous admission of evidence is subject to harmless error review.").

Had the state appellate court found that admission of the evidence regarding the assault rifle was error, it would likely have been harmless error. The prejudice resulting from that evidence was insignificant in light of the overwhelming evidence of guilt, such that there is no "reasonable

---

[10]In a decision without a written opinion, the state appellate court denied Petitioner's state habeas petition alleging ineffective assistance of appellate counsel (Respondent's Ex. 15). This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

possibility that the error affected the verdict." *Oliver v. State*, 214 So. 3d 606, 621 (Fla. 2017) ("Once error has been established, the inquiry is whether there is a reasonable possibility that the error affected the verdict.") (quotation omitted). Accordingly, Petitioner was not prejudiced by counsel's decision not to present this claim, since it did not have a reasonable probability of success.

The Florida Second District Court of Appeals' denial of Petitioner's ineffective assistance of appellate counsel claims was not contrary to *Strickland*. Ground Nine therefore does not warrant federal habeas relief.

Accordingly,

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

2. Petitioner is not entitled to a certificate of appealability (COA). He does not have the absolute right to appeal. 28 U.S.C. § 2253(c)(1). A COA must first issue. Id. He is entitled to a COA only if he demonstrates that reasonable jurists would find debatable whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, he "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the petition stated a valid claim of the denial of a constitutional right.

And because he is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** on July _____31ˢᵗ_____, 2017.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner *pro se*; Counsel of Record